## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25-cr-56 |
| | ) | |
| vs. | ) | **ORDER DENYING MOTION** |
| | ) | **FOR PRETRIAL DETENTION** |
| Ricardo Alexis Gonzalez-Ibarra, | ) | |
| | ) | |
| Defendant. | ) | |

Ricardo Alexis Gonzalez-Ibarra is charged under 18 U.S.C. § 1326 with reentering the United States after having been removed from this country, and the United States moved for his detention pending conclusion of the criminal case. The court held a detention hearing on May 2, 2025, and took the motion under advisement at the conclusion of the hearing to consider recent opinions issued in other districts that address issues similar to those raised in this case.

The United States asserted a "serious risk that [Gonzalez-Ibarra] will flee" within the meaning of 18 U.S.C. § 3142(f)(2)(a). Considering the factors outlined in 18 U.S.C. § 3142(g), the United States argues the nature of the charged offense shows Gonzalez-Ibarra's willful refusal to follow the law after he was removed from this country in 2016. As to weight of the evidence, though not referring to specific contents of Gonzalez-Ibarra's "A file," the United States proffered that the A file includes strong evidence as to each element of the § 3126 charge.

To support the § 3142(g) factor of Gonzalez-Ibarra's history and characteristics, the United States pointed to his report to the Pretrial Services Officer that he had lived with his mother and other family in Bismarck, North Dakota, for three years without authorization to be in this country. The United States also pointed to evidence in the

Pretrial Services Report of Gonzalez-Ibarra (1) having an active warrant resulting from a probation violation charge in the State of Nevada relating to the burglary conviction that predicated his 2016 removal from this country and having not addressed the warrant since returning to the United States; (2) having pled guilty to a January 2025 Bismarck Municipal Court charge of possession of marijuana, which resulted in a deferred imposition of sentence; (3) lacking permission for employment in this country; and (4) having reported daily use of marijuana. (Doc. 16). The United States proffered no evidence on the fourth § 3142(g) factor—danger to the community.

Over Gonzalez-Ibarra's objection, the United States proffered evidence of an active Immigration and Customs Enforcement (ICE) detainer on Gonzalez-Ibarra, asserting that because of his 2016 removal, Gonzalez-Ibarra would be subject to expedited removal and could be deported within a matter of weeks if taken into ICE custody, without the criminal case having been adjudicated.

Gonzalez-Ibarra requested this court order release conditions, including residing with his family in Bismarck. He reported to the Pretrial Services Officer that he fears returning to Mexico because he testified against a cartel member who was convicted of the murder of Gonzalez-Ibarra's brother. Gonzalez-Ibarra proffered he had applied for asylum when he returned to this country and had also applied for asylum in Canada. But because one is not allowed to have simultaneous asylum applications in both the United States and Canada, he states he is currently working with a lawyer to pursue his Canadian asylum claim and does not have an active asylum claim in this country at this time.

As to the outstanding Nevada warrant, Gonzalez-Ibarra proffered he was voluntarily removed from this country before that warrant was issued and he had called

his Nevada probation officer from Mexico in an attempt to address the warrant. He also proffered he had understood his 2016 removal resulted in a five-year period of inadmissibility to the United States, rather than the ten-year period the United States contends, and asserts his date of reentry to the country was outside a five-year period. And he asserts he would cooperate with an evaluation and treatment to address his marijuana use. As to the United States' assertion of the ICE detainer as supporting its motion for detention, Gonzalez-Ibarra argued if he were transferred to ICE custody, he would exercise his due process right to request release while the Canadian asylum claim is pending.

A recent Eastern District of Pennsylvania case addresses consideration of an ICE detainer when the United States moves for detention of an individual charged under § 1326. That court discussed whether a likelihood of imminent, involuntary removal by ICE constitutes serious risk of flight under § 3142(f)(2)(A):

> Here, the plain meaning of "flight" contemplates volitional conduct where an individual chooses to "run away" from, "escape," or "evade" a person, situation, or location. For instance, Black's Law Dictionary defines "flee" as: (1) "[t]o run away; to hasten off"; (2) "[t]o run away or escape from danger, pursuit, or unpleasantness; to try to evade a problem"; (3) "[t]o vanish; to cease to be visible"; and, (4) "[t]o abandon or forsake." See "Flee," Black's Law Dictionary (12th ed. 2024). Merriam-Webster's Dictionary similarly defines the term as: (1) "to run away often from danger or evil"; and (2) "to hurry toward a place of security." See "Flee," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/flee. Those meanings have remained unchanged since the Bail Reform Act's enactment in 1984. See United States v. Storme, 83 F.4th 1078, 1083 (7th Cir. 2023) (citing "Flee," Webster's Third New International Dictionary (1976) ("to run away from"); "Flee," Webster's II New Riverside University Dictionary (1984) ("to run away"); "Flee," American Heritage Dictionary (2d Coll. Ed. 1982) ("to run away from or as from danger")); see also Panzarella v. Navient Sols., Inc., 37 F.4th 867, 872 (3d Cir. 2022) (stating that courts should "seek to determine" the plain meaning of an undefined statutory term by examining how it was defined at the time of the statute's enactment (citing Bostock v. Clayton Cnty., 590 U.S. 644, 654-55 (2020))). In sum, the possibility of Gonzalez's imminent, involuntary removal from the United

States cannot constitute "flight" under a plain reading of 18 U.S.C. § 3142(f)(2)(A), as she would not be leaving the jurisdiction of her own accord, but rather be removed from it by ICE.

United States v. Gonzalez, No. CR 25-143, 2025 WL 1208682, at *4 (E.D. Pa. Apr. 25, 2025) (citations altered). The Gonzalez court discussed the Bail Reform Act's distinctions between risk of nonappearance and risk of flight:

> To take just a few examples, in 18 U.S.C. § 3142(f)(2)(A), the Government must demonstrate by a preponderance of the evidence that the case involves "a serious risk that such person *will flee*." Meanwhile, in 18 U.S.C. § 3142(e)—the statute at issue in step two of the pretrial detention inquiry— the Government must establish by a preponderance of the evidence that there exist "no condition or combination of conditions [that] will reasonably assure the *appearance of the person* as required[.]" Likewise, under 18 U.S.C. § 3146(d), courts are required to impose penalties for any person who knowingly "*fails to appear*" unless that person submits evidence that "uncontrollable circumstances prevented [her] from *appearing*" and that she "did not contribute to the creation of such circumstances in reckless disregard of the requirement to *appear*."

> The distinction between those terms is instructive because evidence suggesting that a defendant "poses a general risk of nonappearance does not necessarily support a finding that the case involves a serious risk of flight under subsection (f), a risk that would contemplate a voluntary action by a defendant to flee." As the Tenth Circuit explained, "one would not describe an individual who has been arrested at a crime scene and involuntarily transported to a police station as having fled the scene." Therefore, the structure of the Bail Reform Act suggests that "flight and nonappearance are not simply interchangeable names for the same concept, nor are they merely different degrees of the same type of risk." "Congress could have drafted the statute so as to omit any requirement for detention that the case involve a 'serious risk of flight' and to direct courts to require only that the case involve a risk of non-appearance (that cannot adequately be mitigated by conditions of release)." But it did not do so, and "[w]here Congress uses different language within the same statute, courts presume Congress meant the language to bear different meanings." . . . see also Henson v. Santander Consumer USA Inc., 582 U.S. 79, 86 (2017) ("[W]hen we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning."). Even if one were to assume that the distinction is *de minimis*, as the Ninth Circuit has suggested, nonappearance also requires an element of volition. United States v. Santos-Flores, 794 F.3d 1088, 1091 (9th Cir. 2015) ("As a number of district courts have persuasively explained, the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition."

4

Id. (citations omitted or altered).

Further, the Eastern District of Pennsylvania court addressed the Bail Reform Act's non-inclusion of illegal reentry as a category of offenses resulting in a presumption of pretrial detention:

> Instead, Congress affirmatively set forth "specific procedures to be followed when a judicial officer determines that a defendant is not a citizen of the United States or lawfully admitted for permanent residence." Santos-Flores, 794 F.3d at 1090-91. Section 3142(d) of the Bail Reform Act "allows a court to temporarily detain persons not lawfully admitted to the United States, as well as individuals who are on pretrial or post-conviction release on other federal, state, or local charges, so that immigration and other officials can take custody of such individuals before . . . conditions of release are set." United States v. Soriano Nunez, 928 F.3d 240, 244 (3d Cir. 2019) (citing 18 U.S.C. § 3142(d)). That section directs judicial officers to:
>
> > order the detention of such person, for a period of not more than ten days . . . and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.
>
> Id. (citing 18 U.S.C. § 3142(d)). In a recent case reviewing that provision, the Third Circuit stated that "[o]ther than during this temporary detention period, individuals on release arising from other offenses and non-citizens are treated the same as other pretrial criminal defendants under the [Bail Reform Act]." Id. at 244-45 (citing Santos-Flores, 794 F.3d at 1091). Indeed, it noted (albeit in a footnote) that "the presence of an ICE detainer and the threat of potential removal alone are not sufficient to deny [Bail Reform Act] pretrial release." Id. at 245 n.4 (citing United States v. Ailon-Ailon, 875 F.3d 1334, 1338-39 (10th Cir. 2017)).

Id. at *5-6 (citations altered).

Following the thorough discussion summarized above, the Eastern District of Pennsylvania court concluded "the possibility of Gonzalez's imminent, involuntary

5

removal from the United States cannot constitute a 'serious risk of flight' under a plain reading of 18 U.S.C. § 3142(f)(2)(A)." Id. at *6. See also United States v. Martinez-Cermeno, No. 25 CR 51, 2025 WL 327832, at *3 (N.D. Ill. Jan. 29, 2025) (noting "criminal detention of a person may not be prolonged as a result of an ICE civil immigration administrative law detainer"); United States v. Romero-Martinez, No. 3:23-CR-176 (JAM), 2024 WL 965150, at *2 (D. Conn. Mar. 6, 2024) (declining to consider an ICE detainer as a factor); United States v. Villatoro-Ventura, 330 F. Supp. 3d 1118, 1135 (N.D. Iowa 2018) ("A risk of involuntary removal does not, by itself, establish 'a serious risk that such person will flee,' such that the Government may seek pre-trial detention pursuant to § 3142(f)(2)(A).").

This court reaches the same conclusion as the courts cited above. The United States has not shown Gonzalez-Ibarra presents a serious risk of flight. The court then conducts the individualized analysis required under the Bail Reform Act, 18 U.S.C. § 3142(a) and (c), and concludes a combination of conditions will reasonably assure Gonzalez-Ibarra's appearance at future proceedings. Release conditions will include residing with his family in Bismarck, reporting to a Pretrial Services Officer regularly, not travelling outside the Bismarck/Mandan area without prior approval of the Pretrial Services Officer, not possessing or using any alcohol or any non-prescribed controlled substance and submitting to periodic substance abuse testing, not possessing any firearm or other dangerous device, participating in a substance abuse evaluation and in any treatment that might be recommended by an evaluator, reporting to ICE officials as required, and promptly reporting any contact with any law enforcement officer to his Pretrial Services Officer.

The United States' motion for detention is **DENIED**.

6

**IT IS SO ORDERED**.

Dated this 13th day of May, 2025.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge